## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Marjorie Newell
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: | February 15, 2017 |
| A.B., V.B., C.R., & E.R. (Minor Children), and | Court of Appeals Case No. 48A02-1608-JT-1964 |
| K.R. (Father), | Appeal from the Madison Circuit Court |
| *Appellant-Respondent,* | The Honorable G. George Pancol, Judge |
| v. | Trial Court Cause No. 48C02-1603-JT-19 48C02-1603-JT-20 48C02-1603-JT-21 48C02-1603-JT-22 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Bailey, Judge.**

# Case Summary

[1] K.R. ("Father") appeals the termination of his parental rights to A.B., V.B., C.R. and E.R. ("Children"), upon the petition of the Madison County Department of Child Services ("the DCS").[1] He presents the issue of whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

# Facts and Procedural History

[2] On April 28, 2014, Mother was arrested and DCS caseworkers found Children in the care of an adult who appeared to be under the influence of drugs. The eldest child advised caseworkers that the Children had no contact with Father.[2] Thus, Children were taken into DCS custody. On May 7, 2014, Children were adjudicated Children in Need of Services ("CHINS"). Father appeared in CHINS proceedings and admitted that Children were CHINS. He was ordered to participate in services, and was compliant over a period of several months. Children were placed in the home of their maternal grandmother ("Grandmother").

[3] In December of 2014, the two younger children went to live with Father after Grandmother suffered a shoulder injury. On January 13, 2015, the CHINS

---

[1] Children's mother, E.B. ("Mother"), has consented to the adoption of Children by her sister and brother-in-law, and is not an active party to this appeal.

[2] Mother had apparently obtained a protective order against Father.

court ordered that Children be placed with Father and the eldest two children moved in with Father, Father's girlfriend, and the girlfriend's five-year-old child. One month later, Father was arrested and charged with three counts of molesting the five-year-old child. A.B. was identified as a prosecution witness.[3]

[4] In June of 2015, Father was released on bond. He contacted a DCS caseworker regarding visitation and was told to consult his attorney due to the pending criminal charges. Thereafter, Father had some minimal contact with the DCS. On October 28, 2015, the CHINS court issued a review order, finding that Father had not cooperated with DCS or Children's case plan and had failed to contact DCS on a regular basis.

[5] On January 16, 2016, Father petitioned the CHINS court for visitation with Children, who were then in the care of their maternal aunt and her husband. Objections to visitation were filed by the DCS and Children's Court-Appointed Special Advocate ("CASA"), based upon the child molesting charges and Children's expressed desires not to see Father. The petition for visitation was denied.

[6] On March 16, 2016, the DCS petitioned to terminate Father's parental rights. An evidentiary hearing was conducted on July 19, 2016. On July 27, 2016, the

---

[3] After Children were forensically interviewed, the DCS found no basis upon which to allege that any of Children had been sexually abused.

trial court entered its findings of fact, conclusions, and order. This appeal ensued.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[7] When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

[8] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are

of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[9] Indiana Code Section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

## Analysis

[10] Father contends that insufficient evidence supports the termination decision. He focuses upon whether there is clear and convincing evidence relating to Section 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being) and Section 31-35-2-4(b)(2)(C) (best interests). He does not challenge the trial court's determination pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), or (D) (satisfactory plan).

[11] Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999). Father argues that the DCS failed to establish, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for

placement outside the home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i).

[12] This invokes a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[13] According to Father, "the precise reasons for removal no longer exist" and "the department simply gave up on his reunification with his children." Appellant's Br. at 13. The Children were initially removed when Mother was arrested and Children had no suitable caregiver in the home. At that time, the eldest child reported that they had no contact with Father. Father concedes that he had little contact with the Children before their removal, but points out that he substantially complied with services and desires to provide a home for the Children in the future. Strictly speaking, Father's claim of "substantial compliance with services" has evidentiary support. He cooperated with service

providers and visited with the Children before their placement in his home. However, the trial court was not constrained to a simple evaluation of whether Father was cooperative with services.

[14] The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. By the time of the termination hearing, Father was facing Level 1 and Level 4 felony child molesting charges and had again lost contact with his Children.

[15] Upon Father's release on bond in June of 2015, he contacted family case manager Rob Belt ("Belt") to inquire about visitation. Belt advised him to contact his attorney, but had "no word" from Father until late September or early October. (Tr. at 37.) That fall, Father called Belt, who re-iterated that Father should contact his attorney. Father's petition for his post-release visitation – which was ultimately unsuccessful – was not filed until January of 2016. Father's last contact with Belt was in April of 2016, when Belt called "to let him know there was a hearing coming up." (Tr. at 38.) By the time of the termination hearing, Children had been in DCS custody for 28 months, with only 6 weeks of that time spent with Father. Children had last seen Father 15 months earlier, and expressed desires not to see Father. One child was anticipating offering testimony in the criminal case against Father.

[16]     The trial court concluded that Father had failed to remedy his lengthy estrangement from his children. The evidentiary record supports the trial court's factual findings and conclusions. The DCS presented sufficient evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

[17]     Father also contends that the DCS did not present clear and convincing evidence that termination is in Children's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. Children's aunt testified that she and her husband were caring for Children and wished to adopt them. She further testified that Children were thriving and were bonded to their four cousins. The CASA also testified that Children were thriving in their aunt's home, and opined that termination of parental rights was in Children's best interests. We have previously held that recommendations by the case manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59. Such is the case here.

# Conclusion

[18]    The DCS established by clear and convincing evidence the requisite elements to support the termination of Father's parental rights.

[19]    Affirmed.


Najam, J., and May, J., concur.